# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | |
| | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.: 4:20-cv-03610** |
| | § | |
| **ONE 2005 RAYTHEON** | § | |
| **AIRCRAFT COMPANY** | § | |
| **HAWKER 800XP AIRCRAFT** | § | |
| **AND ALL LOGS,** | § | |
| **CERTIFICATES AND BOOKS AS** | § | |
| **LISTED IN PLAINTIFF'S** | § | |
| **NOTICE OF SEIZURE** | | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

i

# TABLE OF CONTENTS

TABLE OF CONTENTS…...................................................................................................i

TABLE OF AUTHORITIES .............................................................................................iv

ARGUMENT…………………………….........................................................................1

    I.   SUMMARY OF THE ARGUMENT……………...………………………….……...1

    II.  NATURE OF CASE AND STAGE OF PROCEEDINGS………………………….…...2

    III. FACTUAL BACKGROUND…………………….………………….…...............3

    IV.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW…………………4

        A. STATEMENT OF THE ISSUES……………………………………………...4

        B. STANDARD OF REVIEW…………………………………………………...5

        C. DISMISSAL UNDER RULE 12(b)(1) – LACK OF SUBJECT MATTER JURISDICTION……………………………………………………...……5

        D. DISMISSAL UNDER RULE 12(b)(6) – FAILURE TO STATE A CLAIM…...13

          1. No Violation of Ch. 59 of Texas Code of Criminal Procedure………………....13

CONCLUSION AND PRAYER ………....................................................................19

CERTIFICATE OF SERVICE ................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*1976 Harley Davidson Motorcycle VIN # 2C16410H6 v. State*, 106 S.W.3d 398 (Tex. App.—Corpus Christi 2003, no pet.)……………………………………………………………………..14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………...……………………………5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) …………………………………...……………..5

*Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496 (5th Cir. 2000). …………………………13,

*Crane v. Johnson*, 783 F. 3d 244 (5th Cir. 2015)………………..……………….…….…..…..…5

*Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659 (Tex. 1987)………………………………………………..…………………………14, 15, 17

*Genesis Healthcare Corp. v. Symczk*, 133 S. Ct. 1523 (2013) …………………………….…..……………10

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)…………...………6, 10

*Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007) ………………………….……5

*Hardy v. State*, 102 S.W.3d 123 (Tex. 2003)……………..………………………………………………15

*Hopkins* v. *Walker*, 244 U.S. 486 (1917)……………………………………………………….……6

*Merrell Dow Pharmaceuticals Inc.* v. *Thompson*, 478 U.S. 804 (1986)……………...……….10

*Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246 (1951)……………..…………………9

*New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321(5th Cir. 2008)…...........................5

*One (1) 2002 Cadillac Deville, VIN 1G6KD54Y42U228530 v. State*, No. 04-12-00212-CV, 2012 Tex. App. LEXIS 10457 (Tex. App.—San Antonio Dec. 19, 2012, no pet.)……………………15

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F. 3d 865 (5th Cir. 2001)…………..12

*Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008) ………….…………....…… 5

*Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876 (N.D. Tex. 1998), *aff'd*, 199 F. 3d 279 (5th Cir. 2000). ………………………………………...…………………….…………………..10

*Sandoz v. Cingular Wireless LLC*, 553 F. 3d 913 (5th Cir. 2008).……………….…………………10

*Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921)……………………………………10

*State v. 2008 Nissan Pickup VIN #1N6AA07C88N305551*, No. 11-16-00171-CV, 2017 Tex. App. LEXIS 10786 (Tex. App.—Eastland Nov. 16, 2017)…………………...………………………15, 16

*State v. $11,014.00*, 820 S.W.2d 783 (Tex. 1991)…………....…………………………..14, 15

*State v. Benavides*, 772 S.W.2d 271 (Tex. App.—Corpus Christi 1989)…………………………14

*State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in United States Currency*, 346 S.W.3d 737 (Tex. App.—El Paso 2011)………………….…………………………………14

*State v. Silver Chevrolet Pickup VIN 1GCEC14T7YE257128*, 140 S.W.3d 691 (Tex. 2004)…….14

*State v. Thirty Thousand Six Hundred Sixty Dollars & no/100*, 136 S.W.3d 392 (Tex. App.—Corpus Christi 2004)………………………………………………………………………………..14

*The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22 (1913)…………………………….…………..9

*United States v. $ 87,118.00 in United States Currency*, 95 F.3d 511 (7th Cir. 1996)……………15

*United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319 (5th Cir. 1981)……………………14

*United States v. $ 506,231 in United States Currency*, 125 F.3d 442 (7th Cir. 1997)…....………..18

*United States v. All Assets and Equipment of West Side Building Corp.*, 58 F.3d 1181 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 698 (1996)…………………………………………………………..15

*United States v. On Leong Chinese Merchants Ass'n. Bldg.*, 918 F.2d 1289 (7th Cir. 1990), *cert. denied*, 502 U.S. 809 (1991)………………………………………………………………………15

*Vafaiyan v. State*, No. 2-09-098-CV, 2010 Tex. App. LEXIS 7273 (Tex. App.—Fort Worth Aug. 31, 2010)…………………………………………………………………………………………..15

## Other Authorities

8 U.S.C. § 1331…...............................................................................1, 5, 9, 10

28 U.S.C. § 1441(a)…..............................................................................9

49 U.S.C. Chapter 441……………………………………...………………………8, 9, 11

14 C.F.R. § 47.7………………………………………………...……8, 9, 11, 12

14 C.F.R. §§ 49……………………………………………………………………8

15 C.F.R. § 740.15………………………………………………………………8

Federal Rule of Civil Procedure 12(b)………………………………....………….…...………passim

Tex. Code Crim. Proc. chapter 59……………………………………………………………passim

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | |
| | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.: 4:20-CV-03610** |
| | § | |
| **ONE 2005 RAYTHEON** | § | |
| **AIRCRAFT COMPANY** | § | |
| **HAWKER 800XP AIRCRAFT** | § | |
| **AND ALL LOGS,** | § | |
| **CERTIFICATES AND BOOKS AS** | § | |
| **LISTED IN PLAINTIFF'S** | § | |
| **NOTICE OF SEIZURE** | § | |

### DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **ONE 2005 RAYTHEON AIRCRAFT COMPANY HAWKER 800XP AIRCRAFT AND ALL LOGS, CERTIFICATES AND BOOKS AS LISTED IN PLAINTIFF'S NOTICE OF SEIZURE** (hereinafter, the "Aircraft"), Defendant in the above-referenced proceeding and files this, its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) (the "Motion to Dismiss"), and in support thereof, respectfully shows the Court the following:

### I.    SUMMARY OF THE ARGUMENT

This action arises under and presents substantial questions of law arising under federal jurisdiction, the resolution of which are substantial and necessary in deciding Plaintiff's claims against Defendant. In other words, Plaintiff's claims give rise to federal question jurisdiction because they are predicated upon claims arising under the constitution or laws of the United States. *See* 28 U.S.C. § 1331. Defendant maintains the entire case should be dismissed because

1

neither this Court, nor the 165th District Court of Harris County, Texas (the "State Court") have proper jurisdiction over the property the subject of this case, specifically, the Aircraft.

The State, nor the State Court, have proper subject matter jurisdiction over the Aircraft because the State failed to satisfy its initial burden of establishing probable cause. Thus, the seizure is illegal and improper and the Aircraft must be returned to its lawful owner(s). The record is completely devoid of any facts which would support the State's contention that it had probable cause to believe the Aircraft was "contraband" or was subject to forfeiture under TEX. CODE CRIM. PROC. ART. 59.03. However, even assuming *arguendo* that the Aircraft is subject to the exercise of jurisdiction by either court, removal to the United States District Court for the Southern District of Texas, Houston Division, is proper and should not be disturbed. Accordingly, if this Court determines that Plaintiff may bring forth an action against Defendant in this Court, Defendant moves to dismiss such claims under Federal Rules of Civil Procedure 12(b)(1) and (6).

## II.    NATURE OF CASE AND STAGE OF PROCEEDINGS

This case involves claims alleged by the State of Texas, erroneously and without any credible or legitimate supporting evidence, that the Aircraft is somehow "contraband", and is therefore subject to forfeiture under Chapter 59 of the Texas Code of Criminal Procedure.

On September 10, 2020, in the 165th Judicial District Court, Harris County, Texas in Cause No. 2020-55095, styled *The State of Texas vs. One 2005 Raytheon Aircraft Company Hawker 800XP Aircraft and All Logs, Certificates and Books as Listed in Plaintiff's Notice of Seizure* (the "State Court Action" or the "Complaint"). The State Court Action commenced only after the Aircraft had been illicitly detained for over three months by the Bureau of Industry and Security ("BIS") under vague and ambiguous allegations of alleged improper exportation of the Aircraft.[1]

---

[1] BIS fairly obliterated the 4th amendment of the United States Constitution by detaining the Aircraft without an inkling of an affidavit or other sworn statement of probable cause.

When BIS apparently decided it had no further use of the Aircraft, or reason to detain it, it immediately arranged for the State of Texas to confiscate the Aircraft as set forth herein. On October 23, 2020, Defendant timely filed its Notice of Removal on federal question grounds. Dkt. No. 1. Defendant timely files this Motion to Dismiss and brief in support thereof.

### III.   FACTUAL BACKGROUND

On or about June 10, 2019, Victor Gilberto Alvarez Garcia ("Mr. Gil") purchased the Aircraft from PIBSA Ingeniería y Construcción Industrial SA de CV ("PIBSA"). Mr. Gil, the equitable owner of the Aircraft, is a Mexican citizen and Mexican resident from Ciudad de México, State of Nuevo León, México. On or about September 21, 2020, counsel for Mr. Gil, Gary L. Evans, accepted service on his behalf.

The Aircraft is owned by a Texas trust agreement, the N740HB Trust (the "Trust"), with legal title to the Aircraft held by Global Jets, LLC ("Global Jets"), a Texas limited liability company, as Owner Trustee (the "Owner Trustee"). *See* Exhibit "A", Trust Agreement dated January 13, 2020, attached hereto and incorporated herein by reference. The Aircraft is registered with the Federal Aviation Administration ("FAA") in the name of the Owner Trustee, Global Jets. Under the Aircraft Operating Agreement, PIBSA is the operator of the Aircraft. *See* Exhibit "B", Aircraft Operating Agreement dated January 13, 2020, attached hereto and incorporated herein by reference.

The Aircraft was initially seized following its last flight into the Houston area on May 24, 2020. The Aircraft was detained by Bureau of Industry ("BIS") agents Messrs. Ron Kruger and Paul Mack, because it was about to be or had been allegedly "exported". *See* Exhibit "C", BIS Detention Letter dated May 26, 2020, attached hereto and incorporated herein by reference. The Aircraft is not now, and has never been, being exported from the United States. Instead, it has always been held in a Federal Aviation Administration ("FAA") approved citizen trust for that

purpose. *See* Ex. "A" and Ex. "B".[2] The trust and other such similar documents are always reviewed by FAA counsel, approved,  and recorded by the Federal Aviation Administration (the "FAA") in the FAA registry. Merely owning the Aircraft in a United States trust does not in any respect indicate that the Aircraft had been, or was to be, or is planned to be, "exported" in any respect.

The State's claims are based solely on the State's misunderstanding regarding the Federal Aviation Regulations and non-U.S. Citizen Trusts. Indeed, the State's claims appear to be based on no facts other than the Aircraft is registered in the United States to a non-citizen trust, the beneficiaries of which include a corporation based in Mexico, and a citizen of Mexico. In order to understand the depths of Plaintiff's misunderstanding and misapplication of the law in this case, it is helpful to understand how a non-citizen trust works and how the subject Aircraft is legally registered. Based on the foregoing, the only alleged crime identified by the State or Mr. Price's affidavit is the registration of an Aircraft in the name of a non-citizen, which can be no crime at all.[3]

### IV.   STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

### A.   STATEMENT OF THE ISSUES

Dismissal of Plaintiff's Action is appropriate under Federal Rule of Civil Procedure 12(b)(1) and (6). Accordingly, the issues to be ruled upon by the Court are as follows:

1.   Should this case be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1)

---

[2]Because the Aircraft was sold to Mr. Gil, the undersigned has endeavored to correct and revise the trust and operating agreement to reflect Mr. Gil's current ownership. However, Mr. Mack indicated in e-mail correspondence that any such attempted correction of the record would be considered a violation of the BIS Detention, even though the BIS Detention order only purports to prevent the Aircraft being "exported, released or manipulated in any way". A true and accurate copy of that correspondence is attached hereto as Exhibit "D". Accordingly, although fully prepared to do so, Mr. Gil is not willing to accept the current risk of running afoul of the instructions provided by Mr. Mack, although he does want the records regarding the Aircraft corrected as quickly as possible.
[3] Even assuming, *arguendo*, the registration process employed by the Aircraft owner in this case was a violation of the Federal Aviation Regulations, which it was not, the result would not remotely amount to any of the criminal offenses alleged by the State.

due to the Court's lack of subject matter jurisdiction over Defendant; and

2. Should this case be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**B.    STANDARD OF REVIEW**

Under Rule 12(b)(1), dismissal is warranted for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Crane v. Johnson*, 783 F. 3d 244, 251 (5th Cir. 2015) (internal quotations omitted). The plaintiff bears the burden of proof by a preponderance of the evidence that subject matter jurisdiction exists. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a claim if a plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F. 3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A legally sufficient complaint requires more than just labels and conclusions. *Twombly*, 550 U.S. at 555.  Indeed, the factual allegations pled must be enough to raise a right to relief above the speculative level. *Id.* The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A claim meets the plausibility test when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

**C.    DISMISSAL UNDER RULE 12(b)(1)— LACK OF SUBJECT MATTER JURISDICTION**

Federal question jurisdiction is predicated upon the assertion of a claim arising under the

constitution or laws of the United States. 28 U.S.C. § 1331. Pursuant to the federal "arising under" jurisdiction, the U.S. Supreme Court has recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. *E.g., Hopkins* v. *Walker,* 244 U.S. 486, 490-491, 61 L. Ed. 1270, 37 S. Ct. 711 (1917); *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues. *Grable & Sons*, 545 U.S. at 312. As early as 1912, the U.S. Supreme Court has recognized federal-question jurisdiction over state-law claims in cases that "really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Shulthis* v. *McDougal,* 225 U.S. 561, 569 (1912); *Grable & Sons*, 545 U.S. at 313.

In order to successfully prosecute the State's forfeiture action to judgment, the State must show that Aircraft is contraband and is subject to forfeiture because it was:

> Either the proceeds gained from the commission of an offense, acquired with proceeds from the commission of an offense, used or intended to be used in the commission of an offense, and/or used or intended to be used to facilitate the commission of any offense enumerated under Chapter 59.01(2) of the Texas Code of Criminal Procedure, including but not limited to:
>
> Chapter 34 of the Texas Penal Code (Money Laundering)
>
> Chapter 71.02 of the Texas Penal Code (Engaging in Organized Criminal Activity)
>
> Chapter 32.46 of the Texas Penal Code (Securing the Execution of a Document by Deception)

*See* Dkt. 1-3 § IV. As an initial consideration, the Court must determine certain questions of federal law, i.e., whether the Aircraft was owned and operated in violation of the Federal Aviation Regulations and other applicable federal aviation-related statutes. It appears that

Plaintiff's sole basis for asserting such criminal allegations is the registration of the Aircraft in the name of the Owner Trustee, the beneficiary of which is a Mexican corporation located in Nuevo León, México.  A finding that the non-citizen trust is legal and valid, is necessary to dispute the State's claims that the Aircraft was being used for allegedly illegal activity, or was acquired with the proceeds gained from the allegedly illegal activity. The question whether the non-citizen trust was owned and operated legally is a necessary and substantial question of federal law.

Since the Aircraft was not sold out of the United States, or otherwise exported, and is publicly available, neither BIS or any of its affiliated government agencies have any reason to investigate the Aircraft, as it is purely and simply not subject to the Export Administration Regulations (the "EAR"). Even assuming for a moment that any aircraft could be subject to the EAR, aircraft are generally exempt from the EAR as set forth in the Code of Federal Regulations. Under 15 CFR § 740.15, domestically registered and operated aircraft temporarily flown out of the United States for any purpose are exempt, as set forth below:

> ***U.S. registered aircraft.*** (i) A civil aircraft of U.S. registry operating under an Air Carrier Operating Certificate, Commercial Operating Certificate, or Air Taxi Operating Certificate issued by the Federal Aviation Administration (FAA) or conducting flights under operating specifications approved by the FAA pursuant to 14 CFR part 129, or an air ambulance of U.S. registry operating under 14 CFR part 135, ***may depart from the United States under its own power for any destination,*** provided that:
>
> (A) The aircraft does not depart for the purpose of sale, lease or other disposition of operational control of the aircraft, or its equipment, parts, accessories, or components to a foreign country or any national thereof;
> (B) The aircraft's U.S. registration will not be changed while abroad;
> (C) The aircraft is not to be used in any foreign military activity while abroad; and
> (D) The aircraft does not carry from the United States any item for which a license is required and has not been granted by the U.S. Government.
>
> ***(ii) Any other operating civil aircraft of U.S. registry may depart from the United States under its own power for any destination,*** except to or a destination in Country Group E:1 or E:2 (see supplement no. 1 to this part)

7

(flights to these destinations require a license), provided that:

> (A) The aircraft does not depart for the purpose of sale, lease or other disposition of operational control of the aircraft, or its equipment, parts, accessories, or components to a foreign country or any national thereof;
> (B) The aircraft's U.S. registration will not be changed while abroad;
> (C) The aircraft is not to be used in any foreign military activity while abroad;
> (D) The aircraft does not carry from the United States any item for which an export license is required and has not been granted by the U.S. Government; and
> (E) The aircraft will be operated while abroad by a U.S. licensed pilot, except that during domestic flights within a foreign country, the aircraft may be operated by a pilot currently licensed by that foreign country.

15 CFR § 740.15(a)(2) (emphasis added). The Aircraft subject of the BIS Detention order authored by Messrs. Kruger and Mack falls squarely into the exempt categories described above, or is otherwise beyond the legal and lawful reach of the EAR. Even if the Aircraft was being exported to Mexico, which it was not, Mexico does not fall into a category of the country to which the Aircraft could not legally be exported, although Mr. Gil has no current intent to export the Aircraft anywhere, including Mexico.

Title 49 U.S.C. Chapter 441, supplemented by Parts 47 and 49 of the Federal Aviation Regulations, provides the basis for the present aircraft registration and recordation systems in the United States.[4] While non-US citizens are generally ineligible to register an aircraft in the United States, a trust with a US citizen trustee may register an aircraft even if the beneficiaries of the trust are non-US citizens (a "non-citizen trust"). 14 CFR § 47.7. The Federal Aviation Administration (the "FAA") clarified the policies and procedures for non-citizen trusts to register aircraft most recently in *Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees*

---

[4]The Federal Aviation Administration (the "FAA") has occupied the entire statutory and legislative space involving the registration and operation of aircraft for many decades. The State of Texas, in combination with the actions of a single Polk County Constable, and that of a Special Agent associated with the shadowy Bureau of Industry and Standards are seeking to destroy administrative regulations and requirements promulgated by the FAA under which thousands of aircraft are lawfully held in trust on the FAA registry, and operated all over the globe by noncitizen operators.

*in Situations Involving Non U.S. Citizen Trustors and Beneficiaries*, 78 Fed. Reg. 36,412 (June 18, 2013). In accordance with such statutory, regulatory and policy authority, FAA counsel reviews each proposed trust arrangement before approving any application to register an aircraft to a non-citizen trust.[5]

The registration of the Aircraft was done in accordance with applicable Federal statutes and regulations, including 49 U.S.C. Chapter 441, 14 CFR § 47.7, *Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations Involving Non U.S. Citizen Trustors and Beneficiaries*, 78 Fed. Reg. 36412 (June 18, 2013). However, the State's claims are based on Mr. Price's blatantly apparent and complete misunderstanding with respect to whether or not non-citizens may register aircraft on the United States Registry.

The Affidavit of Mr. Price filed in support of the State's allegations that the Aircraft was used for illegal activity is based solely on unsubstantiated conclusions regarding the validity of the ownership, registration and operation of the Aircraft by and through a valid, and legal, non-citizen trust arrangement. Exhibit B-1 to Def.'s Notice of Removal, Dkt. No. 1-3.  Mr. Price's speculations that because, in his incorrect lay opinion, the Aircraft ownership, registration and operation is in violation of federal law, there is no other conclusion that can be made except that the Aircraft is used in furtherance of criminal activity. In other words, the success of State's forfeiture claims turn on substantial questions of federal law, and thus, invoke the jurisdiction of this Court under 28 U.S.C. § 1331 and § 1441(a). If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has. In the words of Mr. Justice Holmes, if a party "makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad." *The Fair v. Kohler Die*

---

[5]It is highly improbable if not outright impossible to believe that FAA counsel would approve for filing a trust agreement and operating agreement specifically dedicated to the registration and operation of the Aircraft, if doing so would amount to the multiple alleged violations of state and federal law detailed in ¶ 1 of the Price Affidavit attached to Plaintiff's Notice of Seizure.

*& Specialty Co.*, 228 U.S. 22, 25 (1913); *Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951).

The U.S. Supreme Court faithfully applies the precedents interpreting 28 U.S.C. § 1331 to authorize federal-court jurisdiction over some cases in which state law creates the cause of action but requires determination of an issue of federal law. *Grable & Sons*, 545 U.S. at 320, J. Thomas, concurring, *see also e.g., Smith* v. *Kansas City Title & Trust Co.*, 255 U.S. 180 (1921); *Merrell Dow Pharmaceuticals Inc.* v. *Thompson,* 478 U.S. 804 (1986). Simply stated, the State Court does not have the jurisdiction to determine and interpret the applicable federal law upon which this case turns. Because the validity and legality of the ownership and operation of the Aircraft must be determined, in accordance with federal law, federal jurisdiction is properly invoked.

Plaintiff's allegations are insufficient to invoke federal jurisdiction and the facts set forth in Mr. Price's affidavit supporting subject matter jurisdiction are questioned. *Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F. 3d 279 (5th Cir. 2000). This federal court lacks subject matter jurisdiction when there is no actual case or controversy. *Genesis Healthcare Corp. v. Symczk*, 133 S. Ct. 1523, 1528 (2013). If an event occurs that deprives the plaintiff of a personal stake in the outcome of the case or makes it impossible for a court to grant effectual relief to it, the case must be dismissed as moot. *Genesis*, 133 S. Ct. at 1528; *Sandoz v. Cingular Wireless LLC*, 553 F. 3d 913, 921 n. 5 (5th Cir. 2008).

Based on the State's Petition and supporting Affidavit of Mr. Price[6], the State claims the Aircraft is "contraband" and therefore, subject to seizure and forfeiture based solely on the

---

[6] The gravamen of Constable Price's allegations, and virtually all of the potential legal consequences emanating therefrom, is that non-US citizens are not permitted to own an aircraft registered with the Federal Aviation Administration (the "FAA"), which is a catastrophically deficient misunderstanding of the pertinent rules, regulations, and case law that has existed for many decades. Defendant has previously provided the Court with the FAA legal counsel opinion affirming the form and substance of the noncitizen trust under which the Aircraft was placed on the FAA registry, along with entries in the Federal Register affirming the entire concept of trust ownership of aircraft by non-US citizens as recent as 2013. Simply stated, none of these law enforcement agencies instigating these types of proceedings, of which there are currently many, have any legitimate involvement in aircraft registration and ownership in the United States, solely the province of the FAA.

10

State's misunderstanding regarding the Federal Aviation Regulations and non-U.S. Citizen Trusts. Dkt. No. 1-3 at 2. Indeed, the State's claims appear to be based on no facts other than the Aircraft is registered in the United States to a non-citizen trust, the beneficiaries of which include a corporation based in Mexico. In order to understand the depths of Plaintiff's misunderstanding and misapplication of the law in this case, it is helpful to understand how a non-citizen trust works and how the subject Aircraft is legally registered. Based on the foregoing, the only alleged crime identified by the State or Mr. Price's affidavit is the registration of an Aircraft in the name of a non-citizen, which can be no crime at all.[7]

A non-U.S. citizen trust is a common – and entirely legal – ownership structure, created and administered by the FAA over many decades, which serves as the basis for thousands of aircraft currently residing on the FAA registry. Title 49 U.S.C. Chapter 441, supplemented by Parts 47 and 49 of the Federal Aviation Regulations, provides the basis for the present aircraft registration and recordation systems in the United States.[8] While non-US citizens are, *generally speaking*, ineligible to register an aircraft in the United States, a trust with a U.S. citizen trustee may register an aircraft even if the beneficiaries of the trust are non-U.S. citizens (a "non-citizen trust"). 14 CFR § 47.7. The Federal Aviation Administration (the "FAA") clarified the policies and procedures for non-citizen trusts to register aircraft most recently in *Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations Involving Non U.S. Citizen Trustors and Beneficiaries*, 78 Fed. Reg. 36412 (June 18, 2013). In accordance with such statutory, regulatory and policy authority, FAA counsel

---

[7] Even assuming, *arguendo*, the registration process employed by the Aircraft owner in this case was a violation of the Federal Aviation Regulations, which it was not, the result would not amount to any of the criminal offenses alleged by the State.

[8] The Federal Aviation Administration (the "FAA") has occupied the entire statutory and legislative space involving the registration and operation of aircraft for many decades. The State of Texas, in combination with the actions of a single Polk County Constable, and that of a Special Agent associated with the shadowy Bureau of Industry and Standards are seeking to destroy administrative regulations and requirements promulgated by the FAA under which thousands of aircraft are lawfully held in trust on the FAA registry, and operated all over the globe by non-citizen operators.

reviews each proposed trust arrangement before approving any application to register an aircraft to a non-citizen trust.[9]

In the Policy Clarification regarding non-citizen trust agreements, the FAA meticulously reaffirmed that absolutely no distinction is to be made between types of aircraft owners for purposes of regulatory compliance. *See Notice of Policy Clarification for the Registration of Aircraft to U.S. Citizen Trustees in Situations Involving Non-U.S. Citizen Trustors and Beneficiaries*, 78 Fed. Reg. 36,413 (June 18, 2013). Once the FAA completes the registration process, the registered owner is the owner for all purposes under the regulations. *Id.* at 36,414. The regulatory obligations of an owner trustee with regard to an aircraft registered in the U.S. using a non-citizen trust are, and always have been, the same as the regulatory obligations of all owners of U.S. registered aircraft. *Id.* Further, the Policy Clarification acknowledges and confirms that an aircraft owned under a non-citizen trust agreement may be operated by its non-citizen trustor pursuant to the commonly used aircraft operating lease agreement. *Id.* at 36,415-16.

Based on the foregoing, it is well-settled that the Owner Trustee's ownership of the Aircraft pursuant to the Trust is legal and complies with the FAA regulatory requirements for non-citizen trusts contained in 14 C.F.R. § 47.7. The issues in Plaintiff's Complaint have already been conclusively resolved by pertinent statutory, regulatory and administrative policy and Plaintiff now lacks a legally cognizable interest in the outcome. Plaintiff's patently false allegations that the Aircraft is contraband under Article 59.01 of the Texas Code of Criminal Procedure were made in reckless disregard of the truth, or even deliberately. The court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.

---

[9] It is highly improbable if not outright impossible to believe that FAA counsel would approve for filing a trust agreement and operating agreement specifically dedicated to the registration and operation of the Aircraft, if doing so would amount to the multiple alleged violations of federal law detailed in ¶ 1 of the Price Affidavit attached to Plaintiff's Notice of Seizure in this case. That grotesque and indefensible misunderstanding of FAA matters by the state and federal officials responsible for these illicit "law enforcement activities" is solely what has given rise to the instant dispute. Frankly, a dispute that should not exist at all.

3d 865, 868 (5ᵗʰ Cir. 2001). Accordingly, Plaintiff cannot seek relief based on such fabrications and Plaintiff's State Court Action should be dismissed for lack of subject matter jurisdiction.

**D.    DISMISSAL UNDER RULE 12(b)(6)— FAILURE TO STATE A CLAIM**

**1.    No Violation of Ch. 59 of Texas Code of Criminal Procedure**

When considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498 (5ᵗʰ Cir. 2000). The affidavit of Mr. Price attached to Plaintiff's Complaint lacks well-pled factual allegations and consists of nothing more than bare legal conclusions that are directly contrary to the explicit findings of the FAA for this Aircraft and fails to satisfy the pleading requirements of the Federal Rules of Civil Procedure. Plaintiff does not allege facts from which it is plausible to conclude that Defendant violated Chapter 59 of the Texas Code of Criminal Procedure.

Mr. Price blatantly asserts a material misrepresentation of fact in his affidavit attached to Plaintiff's Complaint. Paragraph 17 states, "On August 29, 2020, Affiant received an email from Attorney Evans advising that this aircraft was 'being permanently exported', again clearly supporting the already known unlawful export." Dkt. 1-3 at 9. Although Mr. Price has been advised and is well-informed regarding the erroneous nature of Mr. Evans' statement, which fails to include the word "not" in reference to the Aircraft not being exported (as opposed to being exported), Mr. Price has refused to correct his affidavit accordingly.

The State has failed to establish that the Aircraft was subject to seizure and/or forfeiture by probable cause, and as a result, has no jurisdiction over the Aircraft, or the "res." The State has not made any showing of a connection between the Aircraft and the alleged criminal activity[10], certainly not of any connection that rises even slightly above the level of "mere

---

[10] Other than the complaints about trust ownership of the Aircraft by a non-US citizen, the Price affidavit provides no factual support whatsoever that any crime has been committed in any way, shape, or form.

suspicion." The State has failed to demonstrate that the Aircraft is "contraband", thus, any seizure of the Aircraft pursuant to TEX. CODE CRIM. PROC. ART. 59.03 was improper.

The State's right to bring a forfeiture cause exists by statute, and not by virtue of the constitution or common law. *1976 Harley Davidson Motorcycle VIN # 2C16410H6 v. State*, 106 S.W.3d 398, 401 (Tex. App.—Corpus Christi 2003, no pet.); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied). In the statutory scheme, property is subject to seizure and forfeiture if it is found to be contraband. TEX. CODE CRIM. PROC. ART. 59.03(a). Contraband is property used or intended to be used in the commission of certain felonies, or proceeds derived from those felonies. *See* TEX. CODE CRIM. PROC. ART. 59.01(2); *State v. Silver Chevrolet Pickup VIN 1GCEC14T7YE257128*, 140 S.W.3d 691, 692 (Tex. 2004).

Although Chapter 59 specifies no additional evidentiary requirements for forfeiture beyond proof that the property is contraband, the Texas Supreme Court has held that the State must also show probable cause for seizing a person's property. *See Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987); *see also State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex. 1991). "Probable cause in the context of forfeiture statutes is a reasonable belief that 'a substantial connection, or nexus, exists between the property to be forfeited and the criminal activity defined by the statute.'" *Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency*, 730 S.W.2d at 661, *quoting United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 323 (5th Cir. 1981); *see State v. Thirty Thousand Six Hundred Sixty Dollars & no/100*, 136 S.W.3d 392, 407 (Tex. App.—Corpus Christi 2004, pet. denied); *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in United States Currency*, 346 S.W.3d 737, 744 (Tex. App.—El Paso 2011). "It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes

14

probable cause, without which the State lacks authority to seize a person's property." *Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency*, 730 S.W.2d at 661; *State v. $ 11,014.00*, 820 S.W.2d 783, 784, 35 Tex. Sup. Ct. J. 53 (Tex. 1991); *Hardy v. State*, 102 S.W.3d 123, 129 (Tex. 2003).

Since the government has the burden of establishing probable cause, it must demonstrate a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." *United States v. $ 87,118.00 in United States Currency*, 95 F.3d 511, 518 (7th Cir. 1996) (citing *United States v. All Assets and Equipment of West Side Building Corp.*, 58 F.3d 1181, 1188 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 698 (1996)); *see also United States v. On Leong Chinese Merchants Ass'n. Bldg.*, 918 F.2d 1289, 1292 (7th Cir. 1990), *cert. denied*, 502 U.S. 809 (1991). The State may demonstrate the "substantial nexus" requirement through the use of circumstantial evidence. *See One (1) 2002 Cadillac Deville, VIN 1G6KD54Y42U228530 v. State*, No. 04-12-00212-CV, 2012 Tex. App. LEXIS 10457, at *2 (Tex. App.—San Antonio Dec. 19, 2012, no pet.). However, such evidence must raise more than mere suspicion. *Id.* In other words, the State must prove that it is more probable than not that the seized item was either intended for use in, or derived from, a violation of the enumerated offenses in the forfeiture statute. *Vafaiyan v. State*, No. 2-09-098-CV, 2010 Tex. App. LEXIS 7273, at *7 (Tex. App.—Fort Worth Aug. 31, 2010, pet. denied) (mem. op.); *State v. 2008 Nissan Pickup VIN #1N6AA07C88N305551*, No. 11-16-00171-CV, 2017 Tex. App. LEXIS 10786, at *2-3 (Tex. App.—Eastland Nov. 16, 2017). Here, the State has not made any showing of a nexus between the Aircraft and any money laundering, organized crime, securing the execution of a document by deception or other alleged criminal activities that rises even slightly above the level of "mere suspicion."

In its Complaint, the State alleges that there was probable cause to seize the Aircraft

and that the Aircraft is contraband and thereby subject to forfeiture. Dkt. 1-3 at § IV. Remarkably, Plaintiff fails to state any facts or information upon which its claims are based in its Complaint, but instead attaches the illusory Affidavit of Mr. Price.

In his Affidavit, Mr. Price makes the conjecturally states that there is probable cause to believe that violations of Texas Penal Code Chapter 34 (Money Laundering), Texas Penal Code Chapter 71.01 (Engaging in Criminal Activity), a Felony violation of 49 U.S. Code § 46306(b)(4) (False Statement to Register an Aircraft), a Felony violation of 18 U.S.C. § 554 (Smuggling), a Felony violation of 13 U.S.C. §305 (Unlawful Export Information Activities), a Felony violation of 50 U.S. Code §4819 (Export Control Reform Act), a Felony violation of 18 U.S. Code §1001 (False Statements), a Felony violation of 18 U.S.C. § 1343 (Wire Fraud), and a Felony violation of 26 U.S. Code §7201 (Attempt to Evade Tax), a Felony violation of 18 U.S. Code §1957 (Engaging in Monetary Transactions), and a Felony violation of 50 U.S.C. 4512 (Hoarding of Designated Scarce Materials). Dkt. 1-3 at 5. The purported "facts" in the affidavit relate solely to the ownership, registration, and operations of the Aircraft outside the United States, and fail to provide *any actual evidence* that anything alleged in the Affidavit is actually illegal. In fact, the Affidavit is completely devoid of *any facts* that support the allegations of money laundering, engaging in organized crime, or executing a document by deception, much less any facts that connect the Aircraft to the alleged criminal activities.[11] Mr. Price's unsubstantiated conclusion that probable cause exists, without more, does not establish probable cause for seizure and forfeiture of the Aircraft. To establish probable cause for forfeiture pursuant to TEX. CODE CRIM. PROC. ART. 59.03, there must be actual evidence

---

[11] At best, Mr. Price's baseless and incorrect conclusions about the legality of the trust by which the Aircraft is owned and operated – a method that is both legal and commonly used in the U.S. – would give rise to allegations of violations of the *federal statutes* listed in the Affidavit, but not the criminal activity on which the State's action is based. Thus, there is *no connection* between the Aircraft and the criminal activities alleged by the State.

presented that connects the Aircraft to the alleged crimes. There is ***absolutely nothing*** in the Petition, nor Mr. Price's Affidavit, that ties this Aircraft to any criminal activities the State either may know about or charged, or to any crime that was occurring when the State seized the Aircraft. It is that link, or nexus, between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause, without which the State lacks authority to seize a person's property. TEX. CONST. art I, § 9; *Fifty-Six Thousand Seven Hundred Dollars in United States Currency v. State*, 730 S.W.2d at 661.

Mr. Price's Affidavit offers no support in attempting to evaluate the legitimacy of the complaints brought by the State. For example, Paragraph 1 fails to offer even a shred of factual support for the probable cause alleged by the State. Mr. Price, in Paragraph 19, concludes "probable cause" exists in support of the alleged federal regulatory violations set forth therein, yet fails to provide any facts to support such a conclusion. Similarly, Paragraphs 7-10 set forth Mr. Price's readily apparent and grotesque misunderstanding with respect to whether or not non-U.S. citizens may register aircraft on the United States Registry, all as further discussed herein. Paragraph 5 sets forth nothing more than pure speculation and no facts whatsoever. Paragraph 6 once again demonstrate Mr. Price's complete misunderstanding of FAA aircraft registration and operation, noting ". . . the true owner of the [Aircraft] is PIBSA…a completely foreign owned company of Mexico which is otherwise prohibited from owning a US registered aircraft." Additionally, Paragraph 16 has no relevance to this dispute as the Aircraft was not being "exported." Paragraphs 2 and 13 are irrelevant as the Aircraft was not present in the state of Texas at the time of the sale, thereby triggering no sales or use tax obligations to the State of Texas whatsoever. There is zero basis for Mr. Price to offer any opinions regarding whether or not the transaction would have been exposed to sales tax in the country of Mexico, and the resulting alleged assessment of potentially applicable fines is farcical at best. Summarizing,

Mr. Price's Affidavit provides no underlying facts of any kind or nature, and therefore no probable cause justifying the confiscation or detention of the Aircraft, other than disagreeing with the statutory registration and operation of the Aircraft as perfectly permitted by the FAA.[12]

As noted by one Court of Appeals, "we believe the government's conduct in forfeiture cases leaves much to be desired. We are certainly not the first court to be 'enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for the due process that is buried in those statutes.'" *United States v. $ 506,231 in United States Currency*, 125 F.3d 442, 454 (7th Cir. 1997), quoting *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir. 1992).

Because the State has failed to establish probable cause, has failed to establish a substantial connection between the property to be forfeited and the criminal activity alleged, the State does not have jurisdiction over the Aircraft, *in rem*, or otherwise.[13] Consequently, the present case should be dismissed given the issues squarely centered on the exclusively Federal matters of United States aircraft registration and operation and the regulations pertaining thereto.

## V.   CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Defendant One 2005 Raytheon Aircraft Company Hawker 800XP Aircraft and All Logs, Certificates and Books as Listed in Plaintiff's

---

[12] It should also be exceedingly troubling to this Court, and other courts as well, that the Aircraft, in this case as well as many other cases, are initially detained by the Bureau of Industry and Security, under an allegation of an export investigation, with no affidavit or sworn statement that would begin to legitimize the detention of generally speaking multimillion dollar corporate jet type aircraft, in gross contravention to the very explicit requirements of the 4th Amendment of the United States Constitution. BIS, upon completing its export "investigation", then turns the aircraft over to the State, which is, generally speaking, the first time any of the litigants are provided with some type of sworn statement of probable cause, deficient as it may be.
[13] The State does not have proper jurisdiction over the "res", *i.e.*, the Aircraft as such possession of the subject property was made in error.

Notice of Seizure prays that this Court dismiss all of Plaintiff's claims, and that this Court grant any other and further relief, at law or in equity, to which it may be justly entitled.

Dated: October 28, 2020                    Respectfully submitted,

COATS & EVANS, P.C.

By:  _/s/_ **_Gary L. Evans_**
        Gary Linn Evans
        State Bar No. 00795338
        Email: evans@texasaviationlaw.com
        George Andrew Coats
        State Bar No. 00783846
        Email: coats@texasaviationlaw.com
        Post Office Box 130246
        The Woodlands, Texas 77393-0246
        Telephone: (281) 367-7732
        Facsimile: (281) 367-8003

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record. Should any counsel's email not be on file with the Clerk of Court, I certify that on October 28, 2020, counsel will be served with the foregoing via email.

Angela Beavers
Assistant Criminal District Attorney
Harris County District Attorney's Office
500 Jefferson, Suite 600
Houston, TX 77002
Email: beavers_angela@dao.hctx.net
*Attorney for State of Texas*

/s/ ***Gary L. Evans***
Gary Linn Evans